

**United States Department of Justice**

*United States Attorney*
*Southern District of West Virginia*

*Robert C. Byrd United States Courthouse*
*300 Virginia Street, East*
*Suite 4000*
*Charleston, WV 25301*
*1-800-659-8726*

*Mailing Address*
*Post Office Box 1713*
*Charleston, WV 25326*
*304-345-2200*
*FAX: 304-347-5104*

FILED
JUL 1 6 2014
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

May 1, 2014

J. Timothy DiPiero
DiTrapano Barrett & DiPiero
604 Virginia Street, East
Charleston, West Virginia 25301-2184

Re:  United States v. Stephen B. Herndon
         2:14-0010

Dear Mr. DiPiero:

This will confirm our conversations with regard to your client, Stephen B. Herndon. As a result of these conversations, it is agreed by and between the United States and Mr. Herndon as follows:

1. **CHARGING AGREEMENT.** Mr. Herndon agrees to waive his right pursuant to Rule 7 of the Federal Rules of Criminal Procedure to be charged by indictment and will consent to the filing of a single-count information to be filed in the United States District Court for the Southern District of West Virginia, a copy of which is attached hereto as "Plea Agreement Exhibit A."

2. **RESOLUTION OF CHARGES.** Mr. Herndon will plead guilty to a violation of 31 U.S.C. § 5324(a)(3) (structuring)) as charged in said information.

3. **MAXIMUM POTENTIAL PENALTY.** The maximum penalty to which Mr. Herndon will be exposed by virtue of this guilty plea is as follows:

   (a) Imprisonment for a period of five years;

   (b) A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

SH
———————
Defendant's
Initials

14

    (c)    A term of supervised release of three years;

    (d)    A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

    (e)    An order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664, as may otherwise be set forth in this plea agreement.

    (f)    Costs of prosecution.

    4.    **SPECIAL ASSESSMENT.** Prior to the entry of a plea pursuant to this plea agreement, Mr. Herndon will tender a check or money order to the Clerk of the United States District Court for $100, which check or money order shall indicate on its face the name of defendant and the case number. The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing. Mr. Herndon will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement. If Mr. Herndon fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement. In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Mr. Herndon.

    5.    **FORFEITURE.** Mr. Herndon hereby agrees as follows:

    (a)    To forfeit to the United States $132,000 representing a portion of the funds involved in and traceable to the illegal structuring conduct undertaken by Mr. Herndon and others as set forth in the Information, pursuant to 31 U.S.C. § 5317(c)(1), or as substitute assets pursuant to 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(p), and, as such, consents to the entry of judgment against him in this criminal action forfeiting same;

    (b)    To tender a cashier's check in the amount of $132,000 payable to the Clerk of the United States District Court for the Southern District of West Virginia within ten (10) days of the filing of this Information;

                                                                                   _SH_
                                                                               Defendant's Initials

    (c)    Acknowledges that his failure to pay said funds as described above constitutes a breach of the plea agreement;

    (d)    To indemnify the United States or otherwise make whole the value of any of the above-referenced items to which any other person may assert, or has asserted, a claim to lawful ownership;

    (e)    To assist the United States and its agents in identifying all such property, regardless of its location and the manner in which it is titled, and to fully complete and execute, under oath, a Financial Affidavit in a form supplied by the United States which Affidavit shall be completed, signed and returned to counsel for the United States within seven calendar days from the date of signing this plea agreement;

    (f)    To provide sworn testimony and to execute any documents deemed necessary by the United States to effectuate the forfeiture and to transfer title to the said property to the United States; and,

    (g)    To waive any defenses to this criminal action, or to any related administrative or judicial forfeiture action, based in whole or in part on the Excessive Fines Clause of the Eighth Amendment to the Constitution, or the holding or principles set forth in United States v. Alexander, 509 U.S. 544 (1993); United States v. Bajakajian, 524 U.S. 321 (1998); United States v. Austin, 509 U.S. 602 (1993) and their progeny.

6. **PAYMENT OF MONETARY PENALTIES.** Mr. Herndon agrees not to object to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States. So long as the monetary penalties are ordered to be due and payable in full immediately, Mr. Herndon further agrees not to object to the District Court imposing

 

                                                                        *SH*
                                                                   Defendant's Initials

any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

7. **COOPERATION.** Mr. Herndon will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States. In complying with this provision, Mr. Herndon may have counsel present except when appearing before a grand jury. Further, Mr. Herndon agrees to be named as an unindicted co-conspirator and unindicted aider and abettor, as appropriate, in subsequent indictments or informations.

8. **USE IMMUNITY.** Unless this agreement becomes void due to a violation of any of its terms by Mr. Herndon, and except as expressly provided for in paragraph 10 below, nothing contained in any statement or testimony provided by Mr. Herndon pursuant to this agreement, or any evidence developed therefrom, will be used against Mr. Herndon, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

9. **LIMITATIONS ON IMMUNITY.** Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Mr. Herndon for any violations of federal or state laws. The United States reserves the right to prosecute Mr. Herndon for perjury or false statement if such a situation should occur pursuant to this agreement.

10. **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Mr. Herndon stipulate and agree that the facts comprising the offense of conviction and relevant conduct include the facts outlined in the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit B."

Mr. Herndon agrees that if he withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by

<u>                      SH         </u>
Defendant's
Initials

Mr. Herndon, and Mr. Herndon is subsequently tried on any of the charges in the information, the United States may use and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Mr. Herndon or of any of his witnesses, or in rebuttal of any testimony introduced by Mr. Herndon or on his behalf. Mr. Herndon knowingly and voluntarily waives, see <u>United States v. Mezzanatto</u>, 513 U.S. 196 (1995), any right he has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

The United States and Mr. Herndon understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

11. **AGREEMENT ON SENTENCING GUIDELINES.** Based on the foregoing Stipulation of Facts, the United States and Mr. Herndon agree that the following provisions of the United States Sentencing Guidelines apply to this case.

USSG §2S1.3

| | |
|---|---|
| Base Offense Level | 6 |
| Amount of funds structured from §2B1.1 Table $120,000 > $200,000 | 10 |
| Promotion of unlawful activity | 2 |
| Adjusted Offense Level | 18 |

The United States and Mr. Herndon acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing Guidelines set forth above and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation

<u>SH</u>
Defendant's Initials

of the appropriate guideline range.

13. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Mr. Herndon knowingly and voluntarily waives his right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that the defendant may appeal any sentence that exceeds the maximum penalty prescribed by statute. The United States also agrees to waive its right to appeal any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18 U.S.C. § 3742(b), except that the United States may appeal any sentence that is below the minimum penalty, if any, prescribed by statute.

Mr. Herndon also knowingly and voluntarily waives the right to challenge his guilty plea and his conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

14. **WAIVER OF FOIA AND PRIVACY RIGHT.** Mr. Herndon knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

15. **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United States reserves the right to:

_SH_
Defendant's
Initials

    (a)    Inform the Probation Office and the Court of all relevant facts and conduct;

    (b)    Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

    (c)    Respond to questions raised by the Court;

    (d)    Correct inaccuracies or inadequacies in the presentence report;

    (e)    Respond to statements made to the Court by or on behalf of Mr. Herndon;

    (f)    Advise the Court concerning the nature and extent of Mr. Herndon's cooperation; and

    (g)    Address the Court regarding the issue of Mr. Herndon's acceptance of responsibility.

    16.    **VOIDING OF AGREEMENT.** If either the United States or Mr. Herndon violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

 

                                                                                         _SH_
                                                                                      Defendant's Initials

17. **ENTIRETY OF AGREEMENT**. This written agreement constitutes the entire agreement between the United States and Mr. Herndon in this matter. There are no agreements, understandings or recommendations as to any other pending or future charges against Mr. Herndon in any Court other than the United States District Court for the Southern District of West Virginia.

Acknowledged and agreed to on behalf of the United States:

R. BOOTH GOODWIN II
United States Attorney

By: *[signature]*
MEREDITH GEORGE THOMAS
Assistant United States Attorney

By: *[signature]*
THOMAS C. RYAN
Assistant United States Attorney

TCR/smw

SH
-------
Defendant's
Initials

I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this nine-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____          _5-1-14_____
Stephen B. Herndon                        Date Signed
Defendant


_____          _5/1/14_____
J. Timothy DiPiero                        Date Signed
Counsel for Defendant

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.  CRIMINAL NO._____
    31 U.S.C. § 5324(a)(3)
    18 U.S.C. § 2

STEPHEN B. HERNDON

I N F O R M A T I O N

The United States Attorney Charges:

On or about September 21, 2012, in Logan, Logan County, West Virginia, within the Southern District of West Virginia and elsewhere, defendant STEPHEN B. HERNDON, aided and abetted by Scott E. Ellis, did knowingly and for the purpose of evading the reporting requirements of section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structure, assist in structuring, and attempt to structure and assist in structuring, a transaction with Logan Bank and Trust ("LB&T"), a domestic financial institution, by writing a check in the amount of $9,800 that Scott E. Ellis cashed at LB&T from an account held in the name of American Electric, LLC at J.P. Morgan Chase bank.

PLEA AGREEMENT EXHIBIT "A"

In violation of Title 31, United States Code, Section 5324(a)(3); Title 31, Code of Federal Regulations, Sections 1010.100(t), 1010.311, and 1010.313; and Title 18, United States Code, Section 2.

## FORFEITURE

In accordance with 31 U.S.C. § 5317(c)(1) and Rule 32.2(a) of the Federal Rules of Criminal Procedure, and premised upon the conviction of the defendant STEPHEN B. HERNDON for a violation of 31 U.S.C. § 5324(a)(3) and 18 U.S.C. § 2, as set forth in Count One of the Information, the defendant shall forfeit to the United States any property, real or personal, involved in the offense and any property traceable thereto, including but not limited to the sum of $132,000, more or less, in United States currency involved in, or traceable to, the illegal structuring activity set forth more fully in Count One, for which sum the United States intends to seek the entry of a judgment.

## NOTICE OF INTENT TO FORFEIT SUBSTITUTE ASSETS

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred to, sold to, or deposited with a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of said property listed above as being subject to forfeiture.

UNITED STATES OF AMERICA

R. BOOTH GOODWIN II
United States Attorney


By: _____
MEREDITH GEORGE THOMAS
Assistant United States Attorney



By: _____
THOMAS C. RYAN
Assistant United States Attorney


PLEA AGREEMENT EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.   CRIMINAL NO. _____

STEPHEN B. HERNDON

## STIPULATION OF FACTS

The United States and Stephen B. Herndon stipulate and agree that the facts comprising the offense of conviction in the Information in the Southern District of West Virginia, and the relevant conduct for that offense, include the following:

From approximately 2006 through March 2011, Mr. Herndon was the warehouse manager at the Mountain Laurel Mining Complex, which is owned by Mingo Logan Coal Company, a wholly owned subsidiary of Arch Coal, Inc. Among other duties, the warehouse manager was responsible for soliciting bids for equipment rebuild jobs, which generally included the disassembly, cleaning and inspection of machines used in coal mining, with the rebuilding or replacement of parts that were worn, broken, or scheduled to be replaced.

An Arch employee, Known Person Three, routinely directed certain rebuild work to certain vendors. Generally, the vendors were required to pay Known Person Three ten-percent (10%) of the rebuild contract (the "Rebuild Kickback Scheme"). Mr. Herndon sometimes facilitated these payments by serving as a conduit for the transfer of cash between the vendor and Known Person Three.

One of the vendors involved in the Rebuild Kickback Scheme was Tri-State Mine Service, Inc. ("Tri-State"), which was owned by Scott E. Ellis. Around April 1, 2011, Mr. Herndon left Mountain Laurel and accepted a half-interest in Tri-State.

_SH_
Defendant's Initials

PLEA AGREEMENT EXHIBIT "B"

Around March 1, 2012, Mr. Herndon also formed American Electric, LLC ("American Electric"), a West Virginia limited liability company, with Gary Roeher, another vendor who provided goods and services to the Mountain Laurel Mining Complex. American Electric primarily did pump repair work.

With respect to Tri-State, Mr. Ellis and Mr. Herndon continued to participate in the Rebuild Kickback Scheme with other vendors and pay kickbacks to Known Person Three. Mr. Herndon participated directly in the scheme by making cash payments directly to Known Person Three on behalf of Tri-State. By that time, Known Person Three required the kickback payments to be paid generally $10,000 a month rather than ten-percent deal. At times, Mr. Ellis and Mr. Herndon allowed amount of kickbacks they owed to Known Person Three to accumulate, and they then paid Known Person Three cash kickbacks of more than $10,000 at one time.

To generate the necessary cash, Mr. Herndon and Mr. Ellis intentionally structured cash withdrawals from various personal and business accounts in amounts of $10,000 or less. These two men either personally or through other individuals conducted the cash withdrawals in this manner because they were aware of the bank's obligation to file a Currency Transaction Report ("CTR") with the Internal Revenue Service if they withdrew more than $10,000 in cash.

As an example of one of the numerous structuring transactions, Mr. Herndon wrote Mr. Ellis a check for $9,800 on the American Electric account at J.P. Morgan Chase Bank on September 19, 2012. Mr. Ellis subsequently endorsed and cashed the check at the Fountain Place Mall branch of Logan Bank and Trust ("LB&T") in Logan, Logan County, West Virginia, on September 21, 2012. Mr. Ellis and Mr. Herndon used the proceeds of this check to pay Known Person Three a kickback. Although they owed more than $10,000 in kickbacks at that time to Known Person Three, Mr. Herndon and Mr. Ellis purposefully kept the amount of the check under $10,000 because they did not want LB&T to file a CTR.

Between April 1, 2011, and September, 30, 2013, Mr. Herndon and Mr. Ellis, working in concert with each other, structured cash from various personal and business accounts in an amount of

_SE_
Defendant's Initials

**PLEA AGREEMENT EXHIBIT "B"**

2

$183,835. Mr. Herndon and Mr. Ellis estimate they used all of those structured funds to pay cash kickbacks to Known Person Three, and that during that time period, they paid $237,000 in cash kickbacks to Known Person Three.

The cash kickback amount is larger than the amount structured during the relevant timeframe because Mr. Herndon and Mr. Ellis included in the kickbacks cash from checks, in varying amounts, that were not structured. Mr. Herndon and Mr. Ellis did not keep records of the cash kickbacks paid to Known Person Three. The kickback estimates are based upon a review of the relevant bank records and course of dealing with Known Person Three.

_SH_<br>
Defendant's Initials

**PLEA AGREEMENT EXHIBIT "B"**

This Stipulation of Facts does not contain each and every fact known to Mr. Herndon and to the United States concerning his involvement and the involvement of others in the charges set forth in the Information, and is set forth for the limited purpose of establishing a factual basis for the defendant's guilty plea.

Stipulated and agreed to:

_____  　　　　　　　5-1-14
STEPHEN B. HERNDON　　　　　　　　　　　　　　Date
Defendant

_____  　　　　　　　5/1/14
J. TIMOTHY DIPIERO　　　　　　　　　　　　　　Date
Counsel for Defendant

_____  　　　　　　　5.1.14
MEREDITH GEORGE THOMAS　　　　　　　　　　　　Date
Assistant United States Attorney

_____  　　　　　　　5.1.14
THOMAS C. RYAN　　　　　　　　　　　　　　　　Date
Assistant United States Attorney

　　　　　　　　　　　　　　　　　　　　　　　　SH
　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　Defendant's
　　　　　　　　　　　　　　　　　　　　　　　Initials

**PLEA AGREEMENT EXHIBIT "B"**

4

```
DUPLICATE
Court Name: US District Court/SDWV
Division: 2
Receipt Number: CHAR007877
Cashier ID: aberger
Transaction Date: 07/16/2014
Payer Name: STEPHEN B HERNDON

CRIMINAL DEBT
  For: STEPHEN B HERNDON
  Case/Party: D-WVS-2-14-CR-000110-001
  Amount:         $100.00

CASH
  Amt Tendered:   $100.00

Total Due:        $100.00
Total Tendered:   $100.00
Change Amt:       $0.00
```

Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged. A $53 fee will
be charged for a returned check.



**Terms and Conditions (Remitter and Payee):**

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned" if the Cashier's Check is not cashed by a certain time
    - Please cash/deposit this Cashier's Check as soon as possible to prevent this from occurring
    - In most cases, the funds will be considered "abandoned" before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
    - Stop Payment can only be placed if the Cashier's Check is lost, stolen, or destroyed
    - We may not re-issue or refund the funds after the stop payment has been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check or for any other information about this item

FILED
JUL 16 2014
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

FOR YOUR PROTECTION SAVE THIS COPY
**CASHIER'S CHECK**
Customer Copy
9136407317
06/18/2014
Void after 7 years

Remitter: STEPHEN B HERNDON

$** 132,000.00 **

Pay To The Order Of: DEPARTMENT OF TREASURY
INTER REVENUE DEVISON

Drawer: JPMORGAN CHASE BANK, N.A.
**NON NEGOTIABLE**

Memo: ----------
Note: For information only. Comment has no effect on bank's payment.

282111107 NEW 01/08 8810004306

**CASHIER'S CHECK**
9136407317   25-3
                440
Date  06/18/2014  Void after 7 years

Remitter: STEPHEN B HERNDON

Pay To The Order Of: DEPARTMENT OF TREASURY
INTER REVENUE DEVISON

Pay: ONE HUNDRED THIRTY TWO THOUSAND DOLLARS AND 00 CENTS

$** 132,000.00 **

Drawer: JPMORGAN CHASE BANK, N.A.

Senior Vice President
JPMorgan Chase Bank, N.A.
Columbus, OH

Do not write outside this box

Memo: ----------
Note: For information only. Comment has no effect on bank's payment.

⑃9136407317⑃ ⑊044000037⑊ 758661318⑃