IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                          CRIMINAL ACTION NO. 2:14-cr-00110

STEPHEN B. HERNDON,

      Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

The defendant, Stephen B. Herndon, by counsel, respectfully submits that extraordinary circumstances exist to warrant probation in this case. The defendant has provided substantial assistance to the government to a degree rarely seen resulting in multiple, successful and expeditious prosecutions. Moreover, he has engaged in extraordinary acceptance of responsibility in several significant ways, including volunteering and spending a myriad of hours in helping the West Virginia Banking Association in the detection and prevention of illegal structuring. Finally, several mitigating factors under 18 USC 3553(a) exist which warrant a departure from the guidelines.

### A. HERNDON'S SUBSTANTIAL ASSISTANCE SUPPORTS PROBATION

Counsel relies on the recommendation contained in the sentencing memorandum provided by the government. Counsel requests that the Court hold an *in camera* hearing during the sentencing hearing on October 27, 2014 to learn the full extent of such assistance. As the Court has already heard, Mr. Herndon and his business partner authorized counsel to contact federal authorities immediately to cooperate fully with them which has resulted in a tremendous savings in time and money to the government. Further, because of Mr. Herndon's position inside and outside the company, his extensive, crucial information resulted in extraordinary success for the government in its investigation.

### B. HERNDON'S EXTRAORDINARY ACCEPTANCE OF RESPONSIBILITY SUPPORTS PROBATION

Mr. Herndon has demonstrated what might be termed, "Extraordinary Acceptance of Responsibility." Not only did he confess and cooperate immediately and paid his forfeiture amount in full in an expeditious manner, but several months prior to the existence of a federal investigation, he acted upon his sense of guilt and withdrew from his involvement in the kickback conspiracy/scheme. Initially, he looked up to his boss and rationalized that his boss's claim that kickbacks were just the norm in the coal industry was not so bad. He worked hard to

please his boss, but did not fully appreciate the financial pressures, the difficulty in making cash payments and just how wrong the practice was until after he left Mountain Laurel and had to come up with the cash himself. But to his credit, two years before the federal investigation became known to Herndon, he opened a pump business, American Electric, with Mr. Roeher and they refused to make any kickback payments in connection with the work their company did for Mountain Laurel. In addition, he and Scott Ellis stopped their Tri-State Mine Service payments to Mr. Runyon in June, 2013, some nine months before the federal investigation was made known to him. Further, even though they saw their business gradually declining, they refused to get back into the kickback game. It is important to note that it was the early withdrawal from a conspiracy prior to any awareness or existence of a federal investigation which prompted the Gall District Court to depart so dramatically from the guidelines. The Supreme Court in Gall found that such an early withdrawal from a conspiracy distinguished the defendant from the vast majority of criminal defendants in federal court. U.S. v. Gall, 552 U.S. 38, 56-57(2007).

The truth is that Herndon and Roeher called counsel before Roeher was approached by federal authorities and Herndon actually came to meet with them before they made contact with him. So actually Roeher and Herndon spoke to the feds on the same day; the only reason Roeher was the first to talk is because counsel chose him as he was so nervous and the waiting would have been counter-productive. In a false tax return case, where the guideline range was 10-16 months, the Court in U.S. v. Gardenelli, 545 F.3d 1089 (D.C. Cir. 2008), affirmed a district court's departure from the guidelines and the imposition of a sentence of probation because the defendant had fully cooperated with authorities and had accepted responsibility "to an extraordinary degree." Id. at headnote 1. See also U.S. v. Fagan, 162 F 3d 1280, 1284 (10th Cir. 1988), which allowed a departure even though the defendant received an adjustment for acceptance of responsibility where the defendant showed great remorse to an exceptional degree.

But what makes Herndon's acceptance of responsibility so extraordinary is the remarkable time and effort he has spent researching, preparing, practicing, etc. to make private and public presentations to bank officials and bank employees as part of continuing education sponsored by the West Virginia Banking Association as that organization works to detect and prevent illegal structuring. The Court has already received from the Probation Department Mr. Herndon's account of his experience working with Jerry Cole and Steve Rowley in this endeavor. Together they have prepared a video which may be used throughout the country to help education bank employees. Counsel plans to briefly call Mr. Cole to elicit his perspective on Mr. Herndon's assistance with the West Virginia Bankers Association. In U.S. v. Truman, 304 Fed 3d 586 (6th Cir. 2002), the Circuit Court held the district court erred in not considering a downward departure under 5K2.0 where the defendant similarly provided extensive cooperation to third parties. In Truman, the defendant provided valuable information which led to upgrades in security procedures at a laboratory from where he had stolen drugs.

C. **THE NATURE OF THE OFFENSE AND DEFENDANT'S HISTORY AND CHARACTERISTICS SUPPORT PROBATION**

The Court is fully aware of the significance and the dictates of Gall v. U.S., and related

2

cases. But what sometimes gets missed in Gall is the fact that with a 30 to 37 month guidelines range involving a drug conspiracy, a district judge sentenced Gall to probation where there was no substantial assistance motion made. Courts have commented that Gall and Booker finally made possible "the authority of district judges to engage in individualized sentencing." U.S. v. Vonner, 516 F.3d 382, 392 (6th Cir. 2008); U.S. v. Whitehead, 532 F. 991, 994 (9th Cir. 2008). Moreover, Gall breathed life into Congress's express intent in 25 USC § 994 (j) that the "Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense...."

Naturally, any felony conviction can be considered "serious;" a felony surely has serious consequences for a defendant such as Mr. Herndon, which is addressed below and in some of the attached letters. What makes this crime somewhat less serious than other cases in this guideline range is two-fold. First, a structuring violation is not a specific intent crime. In other words, a person can be guilty of structuring even though he is unaware that his actions constitute a violation of federal law. This is the case with Mr. Herndon who had never even heard of the term "structuring." Secondly, as with many structuring cases, and with most property-related offenses under this guideline section, typically there is a loss and a victim in need of restitution. But in this case, no loss occurred and thus, there is no restitution involved.

Several mitigating factors, of the kind described in Gall, exist in this case and are listed below:

1) This was Mr. Herndon's first offense. He has no criminal record and the Gall Court made note of the importance of considering how consistent and for how long a defendant has lived in a law-abiding manner. One district judge has noted that 18 USC 3553(a)(1) obliges courts to consider a defendant's character, and held that in "cases where the defendant led an otherwise praiseworthy life, the court should consider a sentence below the advisory range." U.S. v. Wachowiak, 412 F. Supp.2d 958 (E.D. Wisconsin. 2006), aff'd 496 F.3d 744 (7th Cir. 2007). Moreover, in U.S. v. Germosen, 473 F. Supp. 2d 221,227 (D. Mass. 2007), the Court sentenced below the guideline range as it held that "there is a demonstrable difference in the recidivism rates of real first offenders as compared to other defendants."

2) His conviction is for a structuring violation and thus no violence was involved.

3) Mr. Herndon is a wonderful and caring parent as evidenced by the many letters attached. In U.S. v. Pauley, 511 F.3d 468, 474 (4th Cir. 2007), the Fourth Circuit approved a downward variance in part because the defendant was a "good parent" which was deemed a valid consideration under Section 3553(a).

4) Mr. Herndon has great family support. His wife's letter and Herndon's letter attached and the one he submitted on behalf of his father are quite compelling.

5) Mr. Herndon has great community support, as evidenced by the several letters attached.

6) Mr. Herndon is a generous, civic-minded person, again as reflected in the letters

3

which describe his many acts of kindness.

7) Mr. Herndon paid in full his forfeiture amount and did so quickly before his guilty plea hearing.

8) Mr. Herndon has already suffered serious consequences. A felony conviction leaves a stigma which is permanent and pervasive. Sometimes courts do not fully appreciate the "anguish and penalty and the burden persons face" when convicted of a felony. U.S. v. Prosperi, 686 F. 3d 32 (1st Cir. 2012). The Prosperi Court affirmed a district judge who sentenced two defendants to six months home confinement, three years probation and 1,000 hours of community service for a serious mail fraud scheme with an 87 to 108-months incarceration guideline range. Further, "a felony conviction irreparably damages one's reputation." U.S. v. Wolff, 758 F.2d 1121, 1125 (6th Cir. 1985). For Mr. Herndon, his conviction has resulted in the complete collapse of his two businesses. His letter to the Court graphically depicts what his conviction and cooperation have cost him in the things his son has been exposed to and the breakdown in extended family relationships. With a felony conviction, his job prospects in Logan are virtually non-existent.

9) Incarceration is not necessary to protect the public as Mr. Herndon poses no danger to the community. In U.S. v. Edwards, 595 F.3d 1004, 1016 (9th Cir. 2010), the Court powerfully noted that "Section 3553(a), for instance, does not require the goal of general deterrence be met through a period of incarceration." Further, the Court quoting legislative history concluded that it "may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose." Id. at fn. 9. Interestingly, the Department of Justice, through its National Institute of Justice, recently published an unofficial article entitled, "Five Things About Deterrence," which supports the notion that imprisonment in this type of case has little deterrent value. See attached Exhibit A.

10) By his oral and written admissions to the government, his probation officer and this Court, and more importantly by his actions, Mr. Herndon has expressed deep and sincere remorse for the part he played in perpetuating an illegal practice and a corrupt culture of extortion and kickback schemes.

## CONCLUSION

In summary, Mr. Herndon, until this period in his life, has led an exemplary life as a son, a husband, a father and as an employee. In short, he is a very good man, has demonstrated extraordinary acceptance of responsibility and provided remarkable substantial assistance while suffering very severe consequences for his crime. As a first-time offender of a non-violent crime, and for the many reasons listed above, a sentence of probation would be most appropriate.

                                                    Respectfully submitted.
                                                  STEPHEN B. HERNDON
                                                  By Counsel

/s/ J. Timothy DiPiero
J. Timothy DiPiero (WVSB# 1021)
DiTrapano, Barrett, DiPiero, McGinley & Simmons, PLLC
P.O. Box 1631
Charleston, West Virginia 25326
(304) 342-0133 (telephone)
(304) 342-4605 (facsimile)
E-Mail: **Tim.DiPiero@dbdlawfirm.com**

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v. CRIMINAL ACTION NO. 2:14-cr-00110

STEPHEN B. HERNDON,

Defendant.

## CERTIFICATE OF SERVICE

I, J. Timothy DiPiero, do hereby certify that a true and correct copy of the foregoing **DEFENDANT'S SENTENCING MEMORANDUM** was served upon the following counsel of record by electronic filing, this 21st day of October, 2014 and addressed as follows:

Merideth George Thomas
Assistant United States Attorney
300 Virginia Street, East
Room 4000
Charleston, WV 25301

**meredith.thomas@usdoj.gov**


/s/ J. Timothy DiPiero
DiTrapano, Barrett, DiPiero, McGinley & Simmons, PLLC
P.O. Box 1631
Charleston, WV 25326
(304) 342-0133
(304) 342-4605

E-Mail: **Tim.DiPiero@dbdlawfirm.com**